BENEDICT H. GRUNTAL and Others, Copartners, Doing Business Under the Firm Name of GRUNTAL, LILIENTHAL & Co., Appellants, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY and Others, Respondents, Impleaded with LOUIS KATZ and Another, Defendants. *

First Department, February 14, 1930.

*Harold Nathan* of counsel [*D. William Leider* with him on the brief; *Cook, Nathan & Lehman*, attorneys], for the appellants.

*Stewart Maurice* of counsel [*Murray D. Welch* with him on the brief; *William J. McArthur*, attorney for the defendant United States Fidelity and Guaranty Company; *Jerome & Rand*, attorneys for the defendant Hartford Accident and Indemnity Company], for the respondents.

*Revg. 134 Misc. 525.

O'MALLEY, J.   By the declaratory judgment appealed from it has been decided that certain negotiable bonds were not held by the plaintiffs in due course and that they had no interest therein as against the defendant surety companies.

Plaintiffs are a firm of stockbrokers and are members of the New York Stock Exchange. The defendant Lewin had been a trader with the plaintiffs and in April of 1928 introduced his partner, the defendant Katz. The latter, after opening a trading account, delivered certain of the bonds in question to the plaintiffs who sold them for his account. Katz received certain payments, and when his account was closed on May 31, 1928, there was a credit balance in his favor.

In May, 1928, the defendant Lewin delivered the other bonds here in dispute to the plaintiffs who also sold the same for his account, remitting to Lewin the proceeds. All of these bonds were coupon bonds payable to bearer and negotiable in form. They were sold by the plaintiffs in their own name without disclosure of the names of the customers.

After the plaintiffs had made the sales they were informed that the bonds had been stolen. Pursuant to regulations of the Stock Exchange the plaintiffs were compelled to buy other bonds of the same description in the open market and make delivery thereof to the purchasers of the stolen securities. The stolen bonds were returned to the plaintiffs.

The defendant surety companies had insured five brokerage houses from whom the bonds had been stolen, and by virtue of payment of the loss to such brokerage houses the surety companies have become subrogated to the rights of the assured, if any, to such bonds.

The court has found that the plaintiffs received all of these stolen bonds in good faith from the defendants Katz and Lewin and without knowledge of any defect in title. It is stipulated that the purchasers of the bonds from plaintiffs and from whom the plaintiffs received them back, bought the same in good faith for value and without notice of infirmity or defect in the title of the sellers.

In these circumstances we are of opinion that under the authority of *Hibbs* v. *Brown* (112 App. Div. 214; 190 N. Y. 167) the plaintiffs have shown good title in themselves. In the case cited the defendants, a firm of stockbrokers in Baltimore, were sued by the plaintiff to recover certain coupons attached to a bond stolen from him. The bond in question had been given to the defendant brokers in Baltimore, who agreed to sell it. They effected sale through a firm of New York brokers, the bonds finally coming into possession

of a concern known as Erico Brothers, who were holders in due course. Upon notice of the theft the defendants took back the stolen bond and substituted another purchased in the open market.

This court and the Court of Appeals both held that under the circumstances the Baltimore stockbrokers were holders in due course. It was stated in this court that the latter had perfect title, inasmuch as they had acquired it from Erico Brothers and were not parties to any fraud affecting the instrument. This conclusion was predicated upon section 97 of the Negotiable Instruments Law. It was further stated: " But even if their [Baltimore brokers] only rights are those derived from the original transaction, still they would be protected either as *bona fide* purchasers or as purchasers or pledgees." (P. 224.)

The Court of Appeals also held the Baltimore brokers to be holders in due course, it being stated: " * * * We feel entirely clear that respondents did acquire possession of the bond and coupons in suit for value and under such circumstances as did not give them notice of or put them upon their inquiry against the outstanding rights of appellant and that they are subject to no weakness of position in this respect." (P. 173.)

The case under consideration is not to be distinguished in principle.

Plaintiffs' title might further be sustained on the theory that they became subrogated under general principles to the rights of the *bona fide* purchasers of the stolen bonds, when, by virtue of the New York Stock Exchange rules, they accepted return thereof and gave similar bonds in exchange.

It follows, therefore, that the judgment in favor of the surety companies should be reversed, with costs, and judgment declared in favor of the plaintiffs, with costs.

Dowling, P. J., Merrell, Martin and Proskauer, JJ., concur.

Judgment reversed, with costs, and judgment directed in favor of plaintiffs, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.